IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERIC SAMUEL NEWTON, JR.,

        Petitioner,

   vs.

WARDEN NEIL TURNER,

        Respondent.

CASE NO. 1:20-cv-2799

DISTRICT JUDGE
Charles Esque Fleming

MAGISTRATE JUDGE
James E. Grimes Jr.

**REPORT &
RECOMMENDATION**

Eric Samuel Newton, Jr. filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Newton is currently in custody at the North Central Correctional Institution serving an aggregate 56-year sentence imposed by the Cuyahoga County Court of Common Pleas in *State v. Newton*, Case Nos. CR-16-605078-B and CR-17-620243-A. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss Newton's petition.

### Summary of underlying facts

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record." *Johnson v. Bell*,

525 F.3d 466, 474 (6th Cir. 2008). The petitioner has the burden of rebutting

that presumption by clear and convincing evidence. *Id.*

Ohio's Eighth District Court of Appeals issued separate decisions for

Newton's two appeals. The first decision, issued on September 5, 2019, related

to Newton's appeal in case number CR-16-605078-B. *See State v. Newton*, 2019-

Ohio-3566, 2019 WL 4201477 (Ohio Ct. App.). For ease of reference, I'll refer

to this case and appeal as Newton's first case and Newton's first appeal. The

second decision, issued on September 12, 2019, related to Newton's appeal in

CR-17-620243-A. *See State v. Newton*, 2019-Ohio-3653, 2019 WL 4316520

(Ohio Ct. App.) I'll refer to this case and appeal as Newton's second case and

Newton's second appeal.

*Newton's first case*

The court of appeals set out the background facts related to the first

case:

> {¶ 2} This case stems from a series of 17 incidents of breaking and entering at businesses across Cleveland's west side that occurred between September 17, 2015, and October 28, 2015. Most of the incidents involved the thieves entering the businesses by using sledgehammers to make holes in the walls so as to not set off door alarms. The thieves stole merchandise, safes, cash registers, and ATMs from the businesses. They wore Halloween masks, and some of their activity was captured on security cameras, but authorities were unable to determine their identities from the footage.

**October 25 Stop**

{¶ 3} On October 25, 2015, at around 2:47 a.m.,
Officer Justin Setty ("Officer Setty") and his partner
responded to an open 911 call from a cellphone in the
area around 3351 West 67th Place. Driving
northbound on West 67th, Officer Setty observed a
white SUV parked on an access road in front of a
gate, facing outward towards the street. The
vehicle's occupants got out, opened the hood, and
began to push on the vehicle's tires. The officers
drove up to the vehicle and asked the occupants if
they were okay. The individuals responded that
their tire light had come on and they were checking
on that but were otherwise fine, so the officers kept
driving.

{¶ 4} The officers continued to check the surrounding
area to identify anything that would have resulted
in a 911 call before turning around and driving back
down West 67th. When they reached the driveway
where the white SUV had been parked, they
observed that vehicle pull out in front of them and
begin to drive southbound on West 67th. In light of
the open 911 call and the individuals' behavior—
specifically, checking on a tire that appeared fully
inflated, and opening the hood of a car that allegedly
had tire trouble—the officers activated their
overhead lights and pulled the vehicle over. Officer
Setty approached the driver's side of the vehicle, and
his partner approached the passenger's side of the
vehicle. Officer Setty observed that one passenger
was crouched in the rear cargo area of the SUV, was
dripping wet, was not wearing shoes, and his socks
appeared to be soiled. Upon seeing this passenger,
the officers proceeded to get verbal confirmation
from each occupant of the vehicle that everyone was
okay and that no one was in the vehicle against their
will. The officers also realized that a cell phone
inside the vehicle was tuned to the radio channel for
the Cleveland Police Department's Second District.
While speaking to the occupants of the vehicle,
officers also observed two masks, a gorilla mask, and
a "Scream" mask.

3

{¶ 5} The officers proceeded to identify everyone in the vehicle and confirm that none of the individuals had any outstanding warrants. Officer Setty testified that he was "pretty certain" that these individuals were involved in the ongoing string of break-ins in the Second District, but they had no probable cause to prolong the stop or arrest anyone in the car. Officer Setty documented the results of the stop in an informational memo to distribute to the police department.

{¶ 6} Later that evening, Rose's Discount Store, located approximately half a block down the road from where this stop occurred, was broken into through the rear wall of the building. When the officers arrived on the scene at Rose's, they observed a stolen U-Haul parked and running at the rear of the store. The individuals in the white SUV—Anthony Palmentera ("Palmentera"), Jose Rivera, Jr. ("Jose"), Jose Rivera, Sr., and Newton—became suspects in that break-in.

**<u>October 28 Stop</u>**

{¶ 7} On October 28, 2015, at around 1:12 a.m., Officer David Gallagher ("Officer Gallagher") and his partner, Officer Ryan Miranda ("Officer Miranda") responded to an alarm at the rear entrance to Dollar Mart located on 3410 Clark Avenue in Cleveland, Ohio. Upon arriving at the rear of the building, Officer Gallagher observed a white Ford Explorer near the rear of the store. Officer Gallagher observed the vehicle start driving, stop driving, and then start driving again. This unusual driving, together with the vehicle's location near the rear of the building where an alarm had recently gone off around 1 a.m., was suspicious to the officers, so they stopped the vehicle.

{¶ 8} Officer Gallagher approached the driver's side of the vehicle and began speaking with Amanda Rivera ("Amanda"), the driver. He asked her to roll the rear windows down and subsequently observed

three males—Palmentera, Jose, and Newton—in the backseat. Upon identifying these three passengers, the officers realized that these were the individuals who had been pulled over several days earlier and were suspects in the neighborhood break-ins. The officers then arrested all four individuals. The officers searched Jose and discovered that he was wearing a harness and straps underneath his clothing. According to Officer Gallagher, both Jose and Newton were extremely wet. The officers also observed gloves, masks, and tools in the backseat of the vehicle.

{¶ 9} During the arrests, the officers seized two cell phones from the car. One phone belonged to Amanda, and the second phone belonged to Newton. Police subsequently obtained a warrant to search the contents of the phones to obtain evidence related to the break-ins. In the affidavit supporting the warrant, Cleveland Police Detective John Lally ("Detective Lally") stated that the phones were recovered from the white Ford Explorer and that this vehicle had been used in at least two breaking and enterings. The affidavit also described one of the cell phones as belonging to Amanda and the other cell phone as, erroneously, belonging to Jose.

{¶ 10} Following the arrests, officers went to Dollar Mart and investigated the scene. They discovered tools and rope leading to the roof of the store. The officers contacted the Cleveland Fire Department to go up to the roof and determine if that was how the suspects had entered, or attempted to enter, the store. This investigation revealed that the suspects had entered the store through the roof.

## Other Incidents

{¶ 11} Other incidents were described by witness testimony at trial. The earliest incident described at trial was a breaking and entering at Ziggy's on September 17, 2015, where the group stole lottery tickets and cash. On September 30, 2015, the group attempted to break into a Family Dollar store but

broke a hole through the rear wall of Xtreme Clothing, a neighboring business in the same shopping plaza. They proceeded to steal merchandise, including clothing, shoes, wallets, and watches, along with two safes, a television, credit cards, and cash from the store.

{¶ 12} Early in the morning on October 2, 2015, officers responded to a call detailing a break-in in progress at Hanini Subs and a U-Haul truck parked outside the store. The responding officers observed a U-Haul truck swerve and stop before its occupants exited the truck and fled. The officers proceeded to investigate the truck and saw that it contained an ATM, a rack of lottery tickets, and duffel bags full of cigarettes and baby formula. An investigation revealed that the suspects had broken into Hanini Subs by smashing a hole through the rear cinder block wall of the building. The investigation also revealed that the U-Haul was stolen.

{¶ 13} On October 17, 2015, suspects broke into a Little Caesars pizza and Subway through the rear cinder block wall of both businesses. The suspects broke into the safe in each business and stole cash from the safes and cash registers.

{¶ 14} On October 22, 2015, a Georgio's Pizza was broken into. The suspects broke into the building by smashing through a cinder block wall and proceeded to smash part of the counter in order to access the safe. Palmentera testified that they took a safe from Georgio's Pizza and that the safe contained a black automatic gun with a wood grip. He explained that he did not open the safe, but Newton and Jose told him about its contents. In addition, the responding officer testified that the owner of Georgio's informed him that a black 9 mm Smith and Wesson semiautomatic pistol had been taken from the safe.

{¶ 15} All of these crimes were committed by some combination of Newton, Jose, Jose Rivera, Sr., Amanda, and Palmentera. Jose testified that sometimes the targeted businesses were identified

6

> by members of the group and the crimes were
> planned in advance, and other incidents were
> unplanned. He also testified that the individuals
> would take turns making holes, entering businesses
> to take merchandise, acting as a lookout, and
> driving.

*Newton*, 2019 WL 4201477, at *1–3 (footnote omitted).

The court of appeals also explained the relevant procedural history of

events during Newton's trial proceedings in his first case:

> {¶ 16} On April 14, 2016, the Cuyahoga County
> Grand Jury issued a 50-count indictment against
> Palmentera, Newton, Amanda, and Jose. Newton
> was charged in 25 of the 50 counts, including one
> count of engaging in a pattern of corrupt activity
> with a furthermore clause, one count of possessing
> criminal tools, and multiple counts of theft, grand
> theft, breaking and entering, vandalism,
> safecracking, and receiving stolen property.
>
> {¶ 17} On January 6, 2017, Newton filed a motion to
> sever his trial from that of Jose and Amanda because
> both had made videotaped statements against
> Newton. On January 12, 2017, Newton filed a pro se
> motion to dismiss based on an alleged violation of his
> speedy trial rights.
>
> {¶ 18} On January 31, 2017, the state placed a plea
> offer on the record for all defendants. With respect
> to Newton, the state would accept a guilty plea to an
> amended count of engaging in a pattern of corrupt
> activity, two counts of grand theft, six counts of
> breaking and entering, and one count of possessing
> criminal tools. Newton rejected this offer. All three
> of his codefendants accepted plea deals. Jose was
> charged in 49 of the 50 counts. He pleaded guilty to
> 17 counts, testified against Newton at trial, and was
> sentenced to five years in prison. Palmentera was
> charged in 38 of the 50 counts. He pleaded guilty to
> nine counts, testified against Newton at trial, and
> was sentenced to four years. Amanda was charged

7

in 11 of the 50 counts. She pleaded guilty to four counts and was sentenced to one year of community control on each count.

{¶ 19} Newton filed a grievance against his counsel. In response, his counsel filed a motion to withdraw on March 30, 2017. On April 4, 2017, the court granted the motion to withdraw and appointed new counsel for Newton. On July 7, 2017, the trial court appointed an additional attorney to represent Newton as second chair.

{¶ 20} On August 15, 2017, the state informed Newton and the court that its original plea offer was still in place, and Newton again rejected the offer.

{¶ 21} On September 17, 2017, Newton filed a motion to suppress. The state responded to the motion to suppress on October 3, 2017, and a hearing on the motion was held that day. The state called Officer Gallagher, Officer Setty, and Detective Lally as witnesses. Following the hearing, the court denied the motion to suppress.

{¶ 22} A jury trial began on October 6, 2017. The state called 24 witnesses, including various police officers and detectives involved with the case, numerous victims, Palmentera, and Jose. On October 16, 2017, the state rested its case. On October 17, 2017, the state made several amendments to the indictment. The "furthermore" clause was deleted from Count 10, reducing that theft offense from a felony of the third degree to a felony of the fourth degree. Defense counsel made an oral Crim.R. 29 motion, and the court denied this motion.

{¶ 23} On October 18, 2017, the jury returned guilty verdicts on 23 of the 25 counts and not guilty verdicts on one count of theft and one count of receiving stolen property. Newton was referred for a presentence investigation report ("PSI") and psychiatric evaluation.

8

{¶ 24} A sentencing hearing was held on April 20, 2018. The court sentenced Newton to a total of 22 years. The court also ordered restitution in the following amounts: $3,000 to victim Georgio's; $3,050 to victim U-Haul; $18,000 to victim Expo Wireless; $500 to Dollar Mart; and $5,000 to Extreme Clothing. The court stated that Newton and his codefendants were jointly and severally liable for the restitution amounts. The court also sentenced Newton to 34 years for unrelated crimes in case Cuyahoga C.P. No. CR-17-620243-A. The court ordered that the sentences in both cases be served consecutively, for an aggregate sentence of 56 years.

*Id.* at 3–4.

*Newton's second case*

The court of appeals described the evidence presented at the second trial:

{¶ 7} The state presented the following witnesses at trial: Cleveland Police Officer David Gallagher; Cleveland Police Sergeant John Lally; FBI Special Agent Andrew Burke; FBI Special Agent Kevin Matthews; FBI Forensics Examiner Daniel Richard; Ohio Internet Crimes Against Children ("OICAC") Task Force Investigator Jason Howell; Cuyahoga County Sheriff's Department Corrections Officer Philip Christopher; and appellant's uncles, Anderson Newton ("Anderson") and Noland Newton ("Noland").

{¶ 8} On October 28, 2015, at approximately 1:12 a.m., Officer Gallagher and his partner conducted a traffic stop involving Newton, Amanda Rivera, Anthony Palment[e]ra, and Jose Rivera. Officer Gallagher was wearing a body camera while conducting the stop. As the officer testified, the camera footage showed Newton in the back seat of the vehicle. During the stop, Officer Gallagher asked Newton to step out of the vehicle. When Newton

stepped out of the vehicle, he initially had a black smart phone in his hands. On the body camera, Officer Gallagher told Newton that he could not have his phone "right now."

{¶ 9} Sergeant Lally conducted a follow-up investigation on the traffic stop. He testified that another investigating officer recovered two cell phones from the stopped vehicle—one pink phone located in the front console and one black cell phone located in the rear seat of the vehicle. The evidence envelope containing the black cell phone was marked with the name "Jose Rivera" as "Defendant," and the owner was listed as "unknown." Sergeant Lally testified that the officers obtained a search warrant to retrieve information from the phone. The phones were forwarded to the FBI for a complete forensics examination.

{¶ 10} FBI Special Agent Burke, of the Cleveland Violent Crime and Child Exploitation Task Force, assisted local law enforcement in the investigation of this case. Special Agent Burke, using equipment called "Cellebrite" that extracts data in its complete and unedited form, extracted forensics data from the black cell phone recovered from the back seat of the vehicle in which Newton was riding. Special Agent Burke testified that in the course of extracting the cell phone's data, a Cellebrite extraction report (state's exhibit No. 3) was generated. Special Agent Burke forwarded this report to the investigating officers.

{¶ 11} Sergeant Lally testified that he reviewed the Cellebrite extraction report he received from Special Agent Burke. The report identified numerous computer searches associated with child pornography, such as the following: "young gay boys, gay boy porn videos," "man masturbating boy," "more nude boys," "best young nude boys," "horny nude young boys," "abused teens-extreme-amateur-teen-hardcore-movies-porn," "boy rape boys," and "man f*** young gay boy." The searches were

conducted between August 29, 2015, and October 2, 2015.

{¶ 12} The report also included text messages from Jose Rivera to an individual using the black cell phone, dated September 13, 2015. In seven separate messages received within approximately one minute, the text states, "Call me right now. Hurry. Hurry. Bro what the f***. Call ke. Chris. Me." Sergeant Lally testified that he learned through his investigation that Newton also goes by the name "Chris."

{¶ 13} Sergeant Lally further testified regarding emails obtained from the phone. The sergeant identified several email addresses associated with the phone: Ericnelson19005@gmail.com; Ericnewtonjr@gmail.com; Ericjr1981@gmail.com; and Ericjr19005@yahoo.com. In the email section of the phone, the report obtained five email messages that were sent from the "ericjr19005@yahoo" address. On August 20, 2013, "Eric Jr." from "ericjr19005@yahoo" emailed "Mr. Cock" a message stating,

> I like boys. so if you send me some good ones ill send you some. Hopefully we can build a trusting relationship. i am not a cop or any law enforcement. That pic u have use to be one of my fav on the web site imgsrc.boy. but they cleaned most of it up especially the good stuff, you can call me Chris. i like 10-13. hope to here from you.

And on August 21, 2013, Eric Jr. also sent a message to "Mr. Cock," stating, "i like the ones you sent! seen one of the[m] before. send me some more good ones ill send you some more too." Later that same day, Eric Jr. emailed a message stating, "ill send more you send me some." All of these emails contained attachments.

11

{¶ 14} Finally, Sergeant Lally testified regarding documents obtained in the "Documents" section of the phone. This section included a document titled, "Eric Newton, Jr. Resume Draft." The resume, which was created on May 3, 2013, and modified on October 21, 2014, included Newton's home address on Grimsby Avenue and the email address of "ericnewtonjr@gmail.com." The report also identified certain photographs that were on the phone, which included photos of Newton as well as photos of unidentified children. Sergeant Lally testified that upon reviewing all of the information contained in the Cellebrite report, he determined the black cell phone belonged to Newton. He conceded, however, that he had no knowledge whether anyone else used Newton's phone. At some point during Sergeant Lally's investigation of Newton, the sergeant learned that the FBI had been conducting a "parallel" investigation of Newton, and the organizations shared information.

{¶ 15} Special Agent Kevin Matthews, of the FBI's Innocent Images Squad, investigates crimes against children, including online possession, distribution, and receipt of child pornography. Special Agent Burke testified that in investigating online child pornography, he assumes the online identity of an established pornographer. Assuming this individual's identity allows the special agent access to other individuals who are sharing online child pornography, specifically through "peer-to-peer" sharing programs such as Ares and Gigatribe.

{¶ 16} Special Agent Matthews testified that in November 2014, he discovered a Gigatribe user named "Chris19005," with a profile picture of a young black boy, and in December 2014, he discovered four password-protected folders associated with this user, entitled, "all black boys," "mix Ricans china," "white boys," and "young black thugs." The special agent requested the user's password to his password-protected files. The user provided the special agent with his password, which was "boy1." Using the password, Special Agent

12

Burke learned there were 485 files containing images or videos with titles indicative of child pornography in "all black boys" folder, 429 files in "mix Ricans china," 434 files in "white boys," and 67 files in "young black thugs" folder.

{¶ 17} The special agent testified that these files were all associated with "Chris19005" through Gigatribe, and they were all associated with the same internet protocol address ("IP" address) identifying the computer and its location. Of these files contained in the password-protected folders, the special agent viewed and downloaded approximately 47 images and 24 videos (state's exhibit No. 28). He testified that the images contained child pornography. A representative sample of the titles of the images depicted within the password protected folders that correspond to each count of the indictment include: "New 2010 Boy is Blown 10YO," "New 2012 11 and 12YR Pillow Penis Boy Lick 2 P10800," "A Little Pussy Videos Young Boy," "Little Thai Boys," "P101 African 11YO Boy FMN ("F * * * Man")," and "Young Boy Getting F***." All of the images depicted young children, sometimes teenagers and sometimes prepubescents, engaging in sexual activity of some kind.

{¶ 18} Special Agent Burke also testified regarding the "blog" section of Gigatribe, where users can post comments, words, or files. On "1/11/14," "Chris19005" posted the following message, "i pay money for the best young black boys pics or videos ages 10-13."[1]

> FN1. According to Special Agent Burke, it is not clear if the date is January 11, 2014, or November 1, 2014, because Gigatribe is a French company and the French write dates using the sequence: day/month/year.

{¶ 19} In his investigation, Special Agent Burke learned that the IP address was linked to 12*** Grimsby Avenue, Cleveland, Ohio. The account

holder at this address was Louise Newton. Law enforcement then executed a search warrant of the Grimsby Avenue residence.

{¶ 20} The FBI's Daniel Richard testified that in "early 2015," he received from his colleague information on 12*** Grimsby Avenue regarding a child pornography investigation. Agent Richard continued the investigation, including conducting surveillance and executing a search warrant to search the premises. In executing the search warrant, the law enforcement officers interviewed residents of the house and determined that Newton was the suspect.

{¶ 21} The officers also conducted an onsite forensics examination of all electronic devices found in the home, and they confiscated only items that contained evidence of child pornography, which included a jump drive and an Acer laptop discovered in the bedroom identified as Newton's. The officers also confiscated photographs found in Newton's bedroom. The photographs contained images of Newton with shirtless boys and a photo of a shirtless young boy on satin sheets with money around him. The officers also discovered a notebook in Newton's dresser that included Newton's email account addresses: esnewtjr2000@yahoo.com, Ericnewtonjr@gmail.com, and Ericjr1981@gmail.com.

{¶ 22} Upon conducting an initial forensics examination of the seized computer, Agent Richard discovered approximately 900 images that depicted mostly prepubescent boys and girls in a state of nudity or engaging in some sexual activity. Agent Richard then turned the seized computer over to OICAC investigator, Jason Howell, for further investigation. In conducting a full forensics examination of the Acer laptop, Howell discovered 23,012 images of "child abuse" and 172 "child abuse" videos. The videos totaled more than 27 hours in length. The examination also revealed 26 images and two videos of children under the age of five. All

14

of the images depicted children engaging in sexual activity. In addition to the child abuse materials, Howell discovered computer searches such as "boy porn," "boys sex," "boys naked," "boys kissing," "pics of shirtless sagging young black kids," "pics of dead kids hit by cars," and "pics of dead body kids." Howell testified that the user searched "belly and boxers" just 13 days before the search warrant was executed. Additionally, Howell testified that the forensics examination also revealed that another Gigatribe user had messaged the user of this computer, stating, "Sorry you are sharing too young kids. Please go away. You are sharing underage."

{¶ 23} Finally, Howell testified concerning other documents discovered on the Acer laptop, including Newton's resume, which listed his address as "12*** Grimsby Avenue" and his email address as "ericnewtonjr@gmail.com." The examination also revealed that the user emailed files to alternative emails. Howell stated that "ericnewtonjr@gmail.com" sent photos and videos, including one titled "13YO, dark skinned boy.mp4," to "esnewtonjr2000@yahoo.com." According to Howell, Newton's Google account included auto-saved information such as a credit card under the name "Eric Newton Jr.," his account was saved as "Eric Newton," and his Windows user name was "Eric." "Eric" last logged in on April 1, 2015, which was six days before law enforcement officers executed the search warrant.

{¶ 24} Anderson, Newton's uncle, also lived at 12*** Grimsby Avenue, with Newton; Anderson's father, Jerome; and previously his mother, Louise. Anderson stated that his mother passed away approximately one week before law enforcement executed the search warrant at his house. Anderson works in internet design and "electrical" and "mechanical work." He maintains a computer station in the basement of the house. The basement computer was not confiscated during execution of the search warrant.

15

{¶ 25} Anderson testified that his father is 86 years old, has dementia, and is not technically proficient. Anderson stated that his brother, Noland, was staying at his house for only a few days when the search was conducted. Anderson identified Newton's bedroom for the authorities, which is the bedroom in which Newton stayed until Noland arrived in town for Louise's memorial service. Anderson also identified the Acer laptop as belong to Newton, although he admitted that on occasion he would play computer games with his children using Newton's laptop. Anderson stated that he never downloaded child pornography or a peer-to-peer software for purposes of sharing child pornography.

{¶ 26} Noland, Newton's other uncle, testified that he resides in Atlanta but came to Cleveland for his mother's memorial service a few days before April 7, 2015, when the search warrant was executed. Noland is an electrical engineer and programs computer software. Noland testified that he stayed in Newton's bedroom while visiting. He stated that he had never downloaded child pornography or a peer-to-peer software for purposes of sharing child pornography. He identified one desktop computer and two Dell laptops belonging to him that were discovered in the residence by law enforcement. These computers were not confiscated during the search.

*Newton*, 2019 WL 4316520, at *2–5. The Ohio court of appeals also

summarized the procedural history of the second case:

{¶ 2} On October 28, 2015, following a traffic stop, Newton was arrested in connection with a series of several incidents of breaking and entering. Subsequently, he was charged in a 47-count indictment relating to these crimes, in Cuyahoga C.P. No. CR-16-605078-B. During a search of the vehicle in which Newton was riding, the police seized evidence pertaining to the offenses charged in Case No. CR-16-605078, including a cell phone belonging to Newton. After obtaining a search

16

warrant to search the contents of the phone, additional charges were filed against Newton.

{¶ 3} On August 8, 2017, Newton was charged in a 31-count indictment in Cuyahoga C.P. No. CR-17-620243-A as follows: Counts 1-17, pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322(A)(2); Counts 18-20, 24, and 25, pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322(A)(1); Counts 21-23, illegal use of minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(1); Counts 26-30, illegal use of minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(3); and Count 31, possessing criminal tools, in violation of R.C. 2923.24(A), with a forfeiture specification.

{¶ 4} On September 17, 2017, Newton filed a motion to suppress the evidence obtained from the October 2015 search in Case No. CR-16-605078-B but incorporated the motion into the lower case of this appeal as well. The trial court denied the motion to suppress, and on October 18, 2017, Newton was convicted of multiple counts in Case No. CR-16-605078-B and sentenced to 22-years incarceration.

{¶ 5} Approximately four months after his conviction in Case No. CR-16-605078-B, on February 21, 2018, a jury returned a verdict of guilty on all charges in Case No. CR-17-620243-A. Thereafter, the court sentenced Newton to 34 years in prison, to run consecutively to his sentence in Case No. CR-16-605078-B. Newton appealed both cases, and this court ordered the cases to be treated as companion appeals, with each appeal briefed, argued, and disposed of separately by the same panel.

*Id*. at *1.

17

## Procedural background

*1. Trial court proceedings*

*1.1 The first case*

In April 2016, a Cuyahoga County grand jury returned a 19-page, multi-count indictment charging Newton with one count of engaging in a pattern of corrupt activity, in violation of Ohio Revised Code § 2923.32(A)(1), 14 counts of breaking and entering in violation of Ohio Revised Code § 2911.13(A), 14 counts of vandalism in violation of Ohio Revised Code § 2909.05(B)(1)(a), four counts of grand theft in violation of Ohio Revised Code § 2913.02(A)(1), eight counts of theft in violation of Ohio Revised Code § 2913.02(A)(1), three counts of safecracking in violation of Ohio Revised Code § 2911.31(A), four counts of receiving stolen property in violation of Ohio Revised Code § 2913.51(A), one count of possessing criminal tools in violation of Ohio Revised Code § 2923.24(A), and one count of having weapons under disability in violation of Ohio Revised Code § 2923.13(A)(2). Doc. 10-1, at 1–19.

After pleading not guilty, Newton filed a motion to suppress challenging the vehicle stop that resulted in the seizure of Newton's cell phone and also challenging the search warrant that a judge issued authorizing authorities to search the phone. Doc. 10-1, at 22–29. Following a hearing, the trial court denied the motion. Doc. 10-2, at 517–18. In October 2017, a jury found Newton guilty of all but one count of theft and one count of receiving stolen property. Doc. 10-1, at 41. In April 2018, the trial court sentenced Newton to an

aggregate total of 22 years' imprisonment. Doc. 10-2, at 2091–2123; *see* Doc. 10-1, at (nunc pro tunc entry correcting judgment).

### *1.2 The second case*

In August 2017, a Cuyahoga County grand jury returned an 11-page, multi-count indictment charging Newton with 22 counts of pandering sexually-oriented matter involving a minor—17 in violation of Ohio Revised Code § 2907.322(A)(2) and five in violation of Ohio Revised Code § 2907.322(A)(1)—eight counts of illegal use of a minor in nudity-oriented material or performance—three in violation of Ohio Revised Code § 2907.323(A)(1) and five in violation of Ohio Revised Code § 2907.323(A)(3)—and one count of possessing criminal tools in violation of Ohio Revised Code § 2923.24(A). Doc. 10-1, at 46–56. Newton pleaded not guilty. Doc. 10-1, at 61.

Before trial in the second case, Newton filed "[a] motion to suppress on the same grounds" as the motion he filed in the first case. Doc. 10-1, at 65. Newton and the State agreed "to incorporate the ... transcript of the suppression hearing" from the first case "as evidence in the suppression hearing in" the second case. Doc. 10-3, at 2167. Noting that transcript and the lack of any change in the law, the trial court denied Newton's motion. *Id*. at 2465.

In February 2018, a jury found Newton guilty of all 31 counts alleged in the indictment. Doc. 10-1, at 77. In May 2018, the trial court sentenced Newton

to an aggregate sentence of 34 years' imprisonment, to run consecutive to the sentence imposed in the first case. Doc. 10-1, at 84.

### 2. Direct appeals

#### 2.1 The first appeal

Newton filed a timely appeal in the first case. *See* Doc. 10-1, at 82. In his supporting brief, Newton raised eight assignments of error:

> I. Whether the trial court erred when it overruled Eric Newton's Motion to Suppress when, one, the initial stop was improper and, two, the warrant affidavit used to search the contents of Mr. Newton's cell phone contained false information.

> II. Whether Newton received ineffective assistance of counsel when defense counsel failed to cite to the bodycam footage showing Newton's ownership of the phone in his Franks challenge.

> III. Whether there was insufficient evidence to convict Newton of engaging in a pattern of corrupt activity as a felony in the first degree as there was insufficient evidence to prove count 25—grand theft of a firearm.

> IV. Whether Newton received ineffective assistance of counsel when defense counsel failed to move for dismissal pursuant to Rule 29 on Count 1, engaging in a pattern of corrupt activity, when the state failed to prove operability of the weapon referenced in Count 25, the predicate count supporting Count 1.

> V. Whether the jury's verdicts finding Mr. Newton guilty are not supported by the manifest weight of the evidence and his convictions violate his rights to fair trial and due process as protected by the constitutions of the United States and the State of Ohio.

VI. Whether the trial court abused its discretion by ordering restitution without considering Newton's present and future ability to pay.

VII. Whether Newton received ineffective assistance of counsel when counsel failed to object to the restitution order on the grounds that the trial court failed to make findings about Newton's present and future ability to pay.

VIII. Whether the trial court imposed a sentence contrary to law and violated Eric Newton's Fourteenth Amendment right to due process and Sixth Amendment right to trial by jury when it punished Newton for exercising his right to trial.[1]

Doc. 10-1, at 138. The Ohio court of appeals affirmed on September 5, 2019.

Doc. 10-1, at 179–206.

Newton filed a timely notice of appeal with the Ohio Supreme Court. *See*

Doc. 10-1, at 207–08. In his memorandum in support of jurisdiction, Newton

raised two propositions of law:

Proposition of Law I: It is reckless disregard for the truth to affirmatively name the owner of property in a warrant affidavit when, in fact, the owner is unknown.

Proposition of Law II: The mere presence of a cell phone at the time crimes are believed to have been committed or at the time suspects are taken into custody does not establish probable cause to search the contents of the phone.

---

[1]     In his return, the Warden omits Newton's last four assignments of error. *See* Doc. 10, at 15.

Doc. 10-1, at 210. On January 21, 2020, the Ohio Supreme Court declined under rule 7.08(B)(4) of its rules of practice to accept jurisdiction over Newton's appeal. Doc. 10-1, at 237.

Although not reflected in the record, the Court notes that Newton filed a petition for a writ of certiorari in the United States Supreme Court on March 12, 2020. *See Newton v. Ohio*, No. 19-8069 (U.S. filed Mar. 12, 2020). That Court denied Newton's petition on May 26, 2020. *Newton v. Ohio*, 140 S. Ct. 2811 (Mem).

### 2.2 *The second appeal*

Newton filed a timely appeal in the second case. *See* Doc. 10-1, at 241. In his supporting brief, Newton raised two assignments of error:

> I. The trial court erred when it overruled the defendant-appellant's motion to suppress where the arresting officer lacked probable cause and specific, articulable facts to justify an investigatory stop.

> II. Where the quality of the evidence did not support the trier of facts verdict of guilt, as there was not sufficient evidence to link the defendant to the acts in question, the defendant's convictions were against the manifest weight of the evidence.

Doc. 10-1, at 256. The Ohio court of appeals affirmed on September 12, 2019. Doc. 10-1, at 312–26.

Newton filed a timely notice of appeal with the Ohio Supreme Court. *See* Doc. 10-1, at 327–28. In his memorandum in support of jurisdiction, Newton raised two propositions of law:

> Proposition of Law I: It is reckless disregard for the truth to affirmatively name the owner of property in a warrant affidavit when, in fact, the owner is unknown.
>
> Proposition of Law II: The mere presence of a cell phone at the time crimes are believed to have been committed or at the time suspects are taken into custody does not establish probable cause to search the contents of the phone.

Doc. 10-1, at 210. On December 17, 2019, the Ohio Supreme Court declined under rule 7.08(B)(4) of its rules of practice to accept jurisdiction over Newton's appeal. Doc. 10-1, at 346.

The Court notes that Newton filed a petition for a writ of certiorari in the United States Supreme Court on March 5, 2020. *See Newton v. Ohio*, No. 19-7983 (U.S. filed Mar. 5, 2020). That Court denied Newton's petition on May 18, 2020. *Newton v. Ohio*, 140 S. Ct. 2778 (Mem).

### 3. *Collateral proceedings*

Shortly before the Ohio Supreme Court declined to review Newton's appeal in his second case, Newton filed an application with the court of appeals under Ohio appellate rule 26(B)(2)(C)[2] to reopen his appeal in the second case.[3]

---

[2]    Rule 26(B)(1) allows an appellant to move, within 90 days of the entry of his appellate judgment, to reopen "based on a claim of ineffective assistance of appellate counsel." Rule 26(B)(2)(c) requires the application to include assignments of error that weren't previously considered "or that were considered on an incomplete record because of appellate counsel's deficient representation."

[3]    The trial and appellate docket numbers listed on the face of Newton's application, Doc. 10-1, at 348, match the numbers for the second case, *see id.* at 57, 308. Also, Newton made clear in his application that it was directed

Doc. 10-1, at 347–59. Newton argued that his appellate counsel was ineffective for failing to challenge the warrant that authorized the search of his cell phone. *Id*. at 349–58. The Ohio appellate court denied Newton's application because he hadn't shown "that there is a reasonable probability of a different outcome … in light of" the fact that the court had "overrul[ed] the same arguments" in the first case. *State v. Newton*, 2020-Ohio-376, 2020 WL 587029, at *2 (Ohio Ct. App. Jan. 31, 2020).

After the Warden filed the record in this case, Newton filed a motion to reconsider and for an extension of time to file the motion, which the court of appeals denied on May 12, 2022. *See State v. Turner*, No. 107200 (Ohio Ct. App. May 12, 2022). Newton filed a motion in the Ohio Supreme Court for leave to file a delayed appeal, which that Court rejected on October 25, 2022. *State v. Newton*, 168 Ohio St. 3d 1417.

### 4.  *Federal habeas proceedings*

Newton filed his pro se petition for writ of habeas corpus on December 6, 2020. Doc. 1, at 15–16. He raised the following grounds for relief, which are reproduced as written:

> Ground One: Petitioner-Newton's Fourteenth Amendment right to Due Process was violated by the State prosecutor committing fraud upon the court, by introducing evidence obtained through illegal search of Petitioner's cell phone which was obtain by the falsification of a search warrant affidavit.

---

toward the second case. *See* Doc. 10-1, at 349 (referring to the second case as "the instant case").

Franks v. Delaware, 438 U.S. 154 and Demjanjuk v. Petrovsky, 10 F.3d 338.

Ground Two: Petitioner-Newton's Fourteenth Amendment Due Process right was violated by the State prosecutor fraud upon the court, and there was insufficient evidence to sustain a conviction against Petitioner. Demjanjuk v. Petrovsky, 10 F.3d 338.

Ground Three: Petitioner-Newton's Sixth Amendment right to Effective Assistance of Trial and Appellate Counsel was violated, both counsels performance were deficient, and fell below an objective standard, because neither argued, nor preserved his Fourth Amendment right to unreasonable search and seizures issue in any meaningful way.

Ground Four: Petitioner-Newton's Sixth Amendment right was violated by the Trial Counsel committing fraud upon the court by ignoring Petitioner's constantly informing Counsel that the Cell Phone belong to him and not Jose Rivera, and that [body cam] video existed, thereby assisting the State prosecutor in Brady v. Maryland, violation, at the Suppression Hearing, 373 U.S. 83.

Doc. 1, at 11–13. Respondent Warden Neil Turner filed a return of writ in response. Doc. 10. Newton filed a traverse. Doc. 11.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104, 110 Stat. 1214 (AEDPA or the 1996 Act), habeas petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr*., 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit

access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when "state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review." *Id.*

    *1. Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020). A state defendant with federal constitutional claims must "fairly presen[t]" those claims to the state courts before raising them in a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003). And a habeas petitioner must "present[] both the factual and legal basis for [the] claims to the state courts." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012). This means

that the "petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). "'[G]eneral allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

### 2. *Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is

an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and establish that actual prejudice resulted from the alleged violation of federal law, or show that a fundamental miscarriage of justice will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

3. *Merits review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the" United States Supreme Court ("contrary to" clause); or (2) "resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding" ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances

in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### Discussion

*1.  Ground one is not cognizable*

In his first ground for relief, Newton challenges the search of his cell phone, which he claims occurred after the prosecutor submitted a false affidavit in support of a search warrant. Doc. 1, at 12. This ground runs headlong into the fact that if a state makes "available [an] avenue for the prisoner to present his claim to the state courts," the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976), "prohibits federal habeas corpus review

of a state prisoner's Fourth Amendment claim." *Good v. Berghuis*, 729 F.3d 636, 637, 639 (6th Cir. 2013).

Here, Newton not only had an opportunity to "present … suppression motion[s] to the state trial court," *id.* at 640, he took advantage of the opportunity. Newton's trial counsel filed a suppression motion in the first case in September 2017. Doc. 10-1, at 21–30. In the motion, counsel argued that "the search of Mr. Newton's cell phone was unlawful and based on an invalid search warrant that was obtained in violation of his constitutional rights." *Id.* at 27. Counsel noted that it was undisputed that search warrant's affidavit "contain[ed] a false statement" in that although one of the cell phones found after a traffic stop belonged to Newton, the affiant asserted that the cell phones belonged to another vehicle occupant. *Id.* at 28.

The trial court held a hearing on the motion, Doc. 10-2, at 459–517, and, at the end of the hearing, denied the motion, *id.* at 517–18. On appeal, Newton challenged the trial court's denial of his motion. *See* Doc. 10-1, at 111–19. The Ohio court of appeals considered and rejected Newton's argument. *See Newton*, 2019 WL 4201477, at *6. And Newton also raised the issue before the Ohio Supreme Court. *See* Doc. 10-1, at 211–12, 216–20.

In February 2018, Newton's counsel also filed a suppression motion in the second case. *Id.* at 58–68. The motion was expressly made "on the same grounds" as in the first case. *Id.* at 61. Newton and the State agreed "to incorporate the … transcript of the suppression hearing" from the first case "as

evidence in the suppression hearing in" the second case. Doc. 10-3, at 2167. Noting the transcript and the lack of any change in the law, the trial court denied Newton's motion in the second case. *Id*. at 2465.

On appeal in the second case, Newton again challenged the trial court's denial of his motion. *See* Doc. 10-1, at 266–74. The Ohio court of appeals again considered and rejected Newton's argument, "adopt[ing] the analysis and conclusion" from its decision in Newton's first case. *See Newton*, 2019 WL 4316520, at *5. As with the first case, Newton also raised the issue before the Ohio Supreme Court. *See* Doc. 10-1, at 331–33, 338–43.

Given the above circumstances, Newton's first ground is not cognizable. *Good*, 729 F.3d at 637, 639.

Perhaps seeking to avoid the fact that his Fourth Amendment claim isn't cognizable, Newton claims that the prosecutor violated his due process rights and committed fraud on the court by introducing evidence obtained based on the submission of a false affidavit. Doc. 10-1, at 6. But Newton did not raise his challenge in Ohio's courts as one involving a due process violation or a fraud on the court. Instead, at every turn, he raised the issue as a Fourth Amendment challenge. *See* Doc. 10-1, at 21–30, 58–68, 111–19, 211–12, 216–20, 266–74, 331–33, 338–43.

Further, because Newton was aware before his trial started that the affidavit was inaccurate—he raised the issue in his first motion to suppress, Doc. 10-1, at 28 ("The State does not dispute that the affidavit that was used

to secure the search warrant contains a false statement with regard to the cell phones")—he had to raise his due process/fraud on the court issue, if at all, on direct appeal. *See Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 830 (6th Cir. 2019) (explaining that Ohio courts enforce res judicata). Because Newton failed to raise the issue before Ohio's courts, the issue is procedurally defaulted. *Williams*, 460 F.3d at 806; *see Hicks v. Collins*, 384 F.3d 204, 211 (6th Cir. 2004).

Newton also asserts that the suppression hearing was a "sham" because—he claims—his counsel and the prosecutor "conspired … to conceal" police body camera evidence that would show that the "search warrant was obtained" based on a false statement. Doc. 1-1, at 5–6. He adds that his assertion is supported by the fact that the trial court failed to "meaningful[ly] review" his motion to suppress. Doc. 1-1, at 7. Relevant to this assertion, the court in *Good* held that "*[i]n the absence of a sham proceeding*, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." 729 F.3d at 639 (emphasis added).

Again, Newton did not raise this claim before Ohio's courts. To be sure, he raised issues related to body camera footage—he claimed that "the details of [his] arrest were caught on" the body camera of an Officer Gallagher. Doc. 10-1, at 112. But Newton raised the alleged body camera footage in relation to his Fourth Amendment challenge and his claim of ineffective assistance. *See*

*id.* at 118–21. He did not argue that his suppression hearing was a sham because his attorney suppressed the alleged body camera evidence. And as with the due process/fraud on the court issue, because (1) Newton was aware of the basis for his claim when he appealed and (2) he failed to raise the issue before Ohio's courts, the issue is procedurally defaulted. *Williams*, 460 F.3d at 806; *see Hicks*, 384 F.3d at 211.

Further, Newton's premise is mistaken. As the Ohio court of appeals explained when it rejected Newton's ineffective assistance argument, "individual ownership of the cell phone was not necessary to establish probable cause." *Newton*, 2019 WL 4201477, at *10. As a result, for purposes of probable cause, it didn't matter who owned the phones that law enforcement officials seized.[4] *Id*. So counsel's strategic decision could not have rendered the process a sham. The Court should thus reject Newton's first ground.

### 2.  *Ground two is procedurally defaulted*

In his second ground, Newton raises two issues. He asserts that his prosecutor committed fraud on the court and that the evidence "was insufficient … to sustain a conviction against" him. Doc. 1, at 12.

Newton's insufficiency argument is a non-starter. Newton merely asserts that the evidence was insufficient. But he fails to explain which case

---

[4]     Newton offers no reason to question this aspect of the court of appeals' decision. For purposes of this petition, therefore, whether the cell phone belonged to Newton or another passenger was irrelevant to the probable cause determination. *See* 28 U.S.C. § 2254(d), (e)(1).

he's challenging, let alone the count or counts he disputes. And he offers no basis to judge his claim. To be sure, he is entitled to a liberal construction of his petition. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But crediting Newton's conclusory, unexplained, and unsupported assertion would require the Court to invent an unmade argument out of whole cloth.

Further, Newton procedurally defaulted his claim that his prosecutor committed fraud on the court and that the evidence was insufficient. In Newton's appeal in the first case, he raised a sufficiency claim as to his conviction for engaging in a pattern of corrupt activity. Doc. 10-1, at 121–23. Newton also argued—briefly—that the "jury's verdicts" were "not supported by the manifest weight of the evidence." *Id*. at 126–27. Newton did not raise a fraud-on-the-court claim. The Ohio court of appeals rejected Newton's sufficiency and manifest weight arguments. *Newton*, 2019 WL 4201477, at *7– 9. Before the Ohio Supreme Court in his first case, Newton only raised Fourth Amendment challenges related the seizure and search of his cell phone. *See* Doc. 10-1, at 209–21.

In his appeal in the second case, Newton did not raise a fraud-on-the-court claim. He did, however, argue in part that because "there was insufficient evidence to link [him] to the acts in question, [his] convictions were against the manifest weight of the evidence." Doc. 10-1, at 274–79. But the court of appeals rejected this argument, *Newton*, 2019 WL 4316520, at *6–8, and, as was the

case in his first appeal, Newton only presented Fourth Amendment issues to the Ohio Supreme Court, Doc. 10-1, at 329–43.

So Newton failed to present his second ground to the Ohio Supreme Court. In other words, he failed to raise and pursue these claims through Ohio's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 848. And because Ohio courts enforce res judicata, it is now too late for Newton to raise these issues in Ohio's courts. *Williams*, 460 F.3d at 806; *see Gerth*, 938 F.3d at 830. As a result, Newton has procedurally defaulted these claims. *See Williams*, 460 F.3d at 806; *English v. Banks*, No. 1:11-cv-675, 2012 WL 3070742, at *15 (S.D. Ohio July 30, 2012) ("Failure to present an issue to the state supreme court on discretionary review constitutes procedural default") (citing *O'Sullivan*, 526 U.S. at 848).

Newton could escape this default by showing cause for failing to raise the issue before the Ohio Supreme Court and that he suffered actual prejudice by the alleged constitutional error. *Maupin*, 785 F.2d at 138. He could also show that a fundamental miscarriage of justice will result if his claim is not considered. *Coleman*, 501 U.S. at 750. This latter "narrow exception" is reserved for petitioners who "can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). Newton,

however, does not assert cause.[5] And he doesn't claim that a fundamental miscarriage of justice will result if his claim is not considered. The Court should thus reject Newton's second ground as procedurally defaulted.

### 3.  Newton's third ground is procedurally defaulted

In his third ground, Newton argues that his trial and appellate counsel were ineffective for failing to "argue[] [or] preserve his Fourth Amendment right [against] unreasonable search[es] and seizures issue in any meaningful way." Doc. 1, at 12. As with Newton's second ground, Newton's third ground is procedurally defaulted.

In Newton's first appeal, he raised an ineffective assistance argument related to his counsel's alleged failure to cite police body camera footage in support of his motion to suppress. Doc. 10-1, at 119–21. Because Newton did not raise ineffective assistance in his second appeal, that case is not relevant to this issue. *See id.* at 256–80. The Ohio court of appeals rejected Newton's argument. *Newton*, 2019 WL 4201477, at *10. Newton, however, did not raise ineffective assistance in his appeal to the Ohio Supreme Court. *See* Doc. 10-1, at 209–21. Instead, he presented a Fourth Amendment issue. *See id.*

As noted, Newton filed an application to reopen his appeal based on ineffective assistance of appellate counsel. Doc. 10-1, at 353–58. And he did

---

[5]     *Cause and prejudice* is a conjunctive requirement. *Murray v. Carrier*, 477 U.S. 478, 494 (1986) ("*both* cause and prejudice must be shown"). So Newton's failure to show cause means that it doesn't matter whether he's shown prejudice. *Id.*

argue that his counsel should have challenged the warrant that authorized the search of his cell phone. *Id*. at 349–58. The Ohio appellate court denied Newton's application. *Newton*, 2020 WL 587029, at *2. Newton, however, did not appeal this decision to the Ohio Supreme Court.[6]

Further, under Ohio's res judicata rule, it is now too late to raise Newton's record-based ineffective assistance claims. *See Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001); *Smith v. Anderson*, 104 F. Supp. 2d 773, 794 (S.D. Ohio 2000) ("The failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under Ohio's doctrine of res judicata."), *aff'd sub nom. Smith v. Mitchell*, 348 F.3d 177 (6th Cir. 2003)).

Because he never presented his current ineffective assistance claims to the Ohio Supreme Court, and because he cannot now raise them in Ohio's courts, Newton has procedurally defaulted those ineffective assistance claims.[7] *See Williams*, 460 F.3d at 806; *English*, 2012 WL 3070742, at *15. And Newton does not claim that he could show cause or that a fundamental miscarriage of

---

[6]     As noted, Newton later filed a motion to reconsider and for an extension of time to file the motion, which the court of appeals denied. *See State v. Turner*, No. 107200 (Ohio Ct. App. May 12, 2022). Newton filed a motion in the Ohio Supreme Court for leave to file a delayed appeal, which that Court rejected on October 25, 2022. *Newton*, 168 Ohio St. 3d 1417. Newton doesn't argue that these events preserve his ineffective assistance claims, nor could he. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004).

[7]     Newton does not claim that ineffective assistance constitutes cause. But, as Respondent correctly notes, Doc. 10, at 31, it would make no difference if he had because defaulted ineffective assistance claims can't constitute cause, *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000).

justice will result if his claim is not considered. The Court should thus reject Newton's third ground.

### 4. *Newton's fourth ground is procedurally defaulted*

In his fourth ground, Newton says that his Sixth Amendment rights were violated because his counsel "commit[ed] fraud upon the court by ignoring [Newton's] constantly informing Counsel that the Cell Phone belong[ed] to [Newton] and not" another passenger in the vehicle, "thereby assisting the … prosecutor in" violating "Brady v. Maryland … at the Suppression Hearing." Doc. 1, at 13.

As an initial matter, this ground is simply an artful way of restating Newton's ineffective assistance argument as to his trial counsel. It should thus be rejected for the same reasons that ground three should be rejected.

Moreover, even assuming that the claim is distinct from ground three, it is also procedurally defaulted. Newton has never argued before any Ohio court that his counsel committed fraud on the court or that his counsel aided the State in committing a *Brady* violation. He's also never argued that the State violated *Brady*. And given that Ohio's courts enforce Ohio's res judicata rule, *Gerth*, 938 F.3d at 830, it is too late for Newton to raise this issue now. As is the case with Newton's second and third grounds, Newton's fourth is procedurally defaulted.[8] It should therefore be rejected.

---

[8]     As noted above, Newton ignores the fact that the Ohio court of appeals explained the irrelevance of the point Newton hoped to prove through the body camera footage he wanted his counsel to present. This irrelevance, which

## Conclusion

For the reasons set forth above, I recommend that Newton's petition be dismissed.

Dated: September 11, 2023

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).

---

Newton doesn't contest, is alone a valid reason for counsel not to heed Newton's "constant[]," Doc. 1, at 13, demands.

40